IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CALEB S. LISENBEE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 3:06-cv-1159 |
| v. | ) | Judge Trauger/Brown |
| | ) | |
| FEDEX CORPORATION and, | ) | |
| FEDERAL EXPRESS EUROPE, | ) | |
| INC. | ) | |
| Defendants. | ) | |

**TO: The Honorable Aleta A. Trauger, U.S. District Judge**

## REPORT AND RECOMMENDATION

## I.     INTRODUCTION

Defendant FedEx Corporation (hereinafter "FedEx") has filed a motion for summary judgment requesting the dismissal of the Title VII claims against FedEx. (Docket Entry 23). Federal Express Europe, Inc. (hereinafter "FedEx Europe") has not yet been served and has not joined FedEx in the instant motion. The Plaintiff alleges race discrimination and retaliation in violation of Title VII, as well as violation of the Americans with Disabilities Act. 42 U.S.C. § 2000e; (Docket Entry 20). This case was referred to the Magistrate Judge on December 7, 2006:

> for case management, decision on all pretrial, nondispositive motions and
> report and recommendation on all dispositive motions under 28 U.S.C. §
> 636(b)(1)(A) and (B) and to conduct any necessary proceedings under Rule
> 72(b), Fed. R. Civ. P.

(Docket Entry 3). A case management conference occurred on September 12, 2007. (Docket Entry 20). The Magistrate Judge has reviewed the motion for summary judgment and supporting

1

memorandum as well as the responses and replies.

For the reasons stated below, the Magistrate Judge **recommends** that FedEx's motion for summary judgment be **granted in part** and **denied in part** and that this action be **dismissed** as to FedEx. Specifically, the Magistrate Judge finds that there is not sufficient evidence that FedEx and FedEx Europe are so interrelated to hold FedEx responsible for any alleged Title VII violations of FedEx Europe. The evidence provided clearly establishes that the two are separate and distinct entities. Therefore, the Magistrate Judge **recommends** that FedEx's motion for summary judgment on this issue be **granted** and that this action be **dismissed** against FedEx. The Magistrate Judge finds that there is no adequate relief under German law and as such, FedEx's motion for summary judgment on ground of *forum non conveniens* should be **denied.**

The Magistrate Judge further recommends that the remaining claims be transferred under 28 USC § 1404 to the Western District of Tennessee for any further proceedings as there is no real relationship of these cases with any party to the Middle District of Tennessee sufficient to justify hearing the case here.

## II.      BACKGROUND

The Plaintiff is a U.S. citizen who originally filed charges against the defendant for alleged employment discrimination in March 2005. (Docket Entry 1, 15, 16). A Notice of Right to Sue was received on September 26, 2006. (Docket Entry 20). The claimant filed a *pro se* Complaint against Defendant FedEx in the United States District Court for the Middle District of Tennessee on December 5, 2006, alleging employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"). (Docket Entry 1). He has since retained counsel. (Docket Entry 12). FedEx filed an Answer to the Complaint on April 18, 2007.

2

(Docket Entry 11).  Plaintiff moved to amend the Complaint on August 21, 2007, to add FedEx Europe as a defendant.  (Docket Entry 12-1).  This motion was granted, and the claimant filed an Amended Complaint on August 23, 2007.  (Docket Entry 15).  FedEx filed an Answer on September 10, 2007.  (Docket Entry 16).  However, it appears that to date, FedEx Europe has not been served.[1]

On September 12, 2007, the parties discussed whether FedEx is a proper party during a Case Management Conference held by the Magistrate Judge.  (Docket Entry 20, 25).  The parties were given a discovery deadline of November 12, 2007 and a dispositive motions deadline of December 10, 2007, for this particular issue.  (Docket Entry 20, 25).  Plaintiff produced a set of interrogatories and requested production of documents from the defendant, to which FedEx responded on November 14, 2007.  (Docket Entry 25, Exhibit A).

Plaintiff had been employed with FedEx Europe since January 4, 1993, and has worked as a hub handler.  (Docket Entry 1, 31-1).  Prior to his career with FedEx Europe, Plaintiff served in the U.S. Air Force for thirteen years, after which he received an Honorable Discharge.  (Docket Entry 1).  His career with the Air Force yielded him "extensive knowledge and experience" in the postal field – both domestic and international.  (Docket Entry 1).

The employment contract at issue here is between FedEx Europe and Plaintiff.  (Docket Entry 24-2, p. 24).  In his Complaint, Plaintiff first claims that the Defendants are responsible for

---

[1]The Magistrate Judge had a brief telephone conference with the parties on August 14, 2008, to discuss this matter.  Originally, it appeared to the Plaintiff and the Magistrate Judge (Docket Entries 19 and 20) that FedEx Europe would need to be served under the Hague Convention.  However, recent filings by FedEx have demonstrated otherwise.  (See Docket Entry 24-3).  It appears that FedEx Europe was incorporated in Delaware and has it's principal place of business in Memphis, Tennessee.  Therefore, the Magistrate Judge has by separate order (Docket Entry 32) given the Plaintiff 20 days to serve FedEx Europe.

3

"failure to promote" him and for retaliation against him for his charge of discrimination. (Docket Entry 1). In his thirteen years with FedEx Europe, he never received a promotion, even though approximately fifteen or more other promotions were given. (Docket Entry 1).

Further, Plaintiff accuses the Defendants of failing to "provide information and training for advancement consideration." (Docket Entry 1). Additionally, the defendants allegedly failed to inform the claimant of company benefits. (Docket Entry 1). Plaintiff also complained of a hostile work environment, where he heard derogatory racial statements from his manager and saw "racially offensive materials in [the] work area." (Docket Entry 1, 19). Further, he did not receive a wall locker nor an entry pass for the FedEx Center. (Docket Entry 19). He was generally not informed of group meetings, and he was often reprimanded by management for small offenses while fellow co-workers went unpunished for similar offenses. (Docket Entry 1, 19). He complained, for instance, that a co-worker who removed some of Plaintiff's personal items from the work area went unpunished by management. (Docket Entry 1).

FedEx answers that Plaintiff was never faced discrimination in the workplace -- neither through derogatory statements nor by the presence of racially offensive materials. (Docket Entry 17, 19). For instance, FedEx explains that there were no wall lockers available for Plaintiff at that time and that Plaintiff failed to get the proper airport ID from airport authorities (which was out of FedEx's control). (Docket Entry 17). Further, Plaintiff received all the training that his co-workers received, except for those sessions in which Plaintiff chose not to participate. (Docket Entry 17).

In his complaint, Plaintiff also accuses the Defendants of "failure to acknowledge and accommodate physical disability" (as the plaintiff has a prosthetic left knee). (Docket Entry 1,

4

17, 19). He claims that, starting in 2001 and under doctor's orders, he repeatedly asked his manager for a different job, as the shuttle hub job required "[prolonged] standing, [as well as the] lifting and loading of heavy packages." (Docket Entry 1). In June 2004, the pension office determined he has a 50% disability. (Docket Entry 1). Despite his continued requests, the Plaintiff was not transferred to a different job until September 2004. (Docket Entry 1). After his transfer, however, Plaintiff was still asked to complete tasks that violated his medical waiver (despite his complaints). (Docket Entry 1, 19). He claims he was repeatedly threatened by management that he would be forced to return to his old work assignment, thereby putting his health in danger because of his disability. (Docket Entry 1, 19).

However, FedEx claims that these allegations are baseless, as the company received notice of Plaintiff's *40%* handicap status on March 1, 2004, and he was reassigned to a less physically demanding job when he returned to work after a period of medical leave and vacation. (Docket Entry 17, 19). Further, he was given a seven hour shift instead of the recommended eight hour shift. (Docket Entry 17, 19).

As a result of the above allegations, which Plaintiff claims are still being committed by the Defendants, he seeks to recover "lost wages (past and future), lost employment opportunities, employment benefits, and compensatory damages" in the amount of fifty million dollars. ((Docket Entries 1, 5, and 17). Although FedEx denies the occurrence of the acts alleged by the Plaintiff, FedEx bases its motion for summary judgment on two claims. (Docket Entry 11, 16, 23-24). FedEx argues that the case should be dismissed because (1) FedEx Europe's actions cannot be imputed to FedEx, and (2) the *forum non conveniens* doctrine is applicable. (Docket Entry 23-24).

5

## III. LEGAL DISCUSSION

### A. Standard of Review

The Magistrate Judge has applied the well established standard for determining whether a motion for summary judgment should be granted. Summary judgment is appropriate if there is "no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The main inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After sufficient time for discovery and upon motion, Fed. R. Civ. P. 56(c) mandates summary judgment against a party who fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party must show there is "no genuine issue as to any material fact," and for this reason, the material presented must be viewed in a "light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). In order to survive summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(e). Thus, even if the nonmovant produces some evidence, the production will not be sufficient to defeat summary judgment so long as no reasonable jury could reach a finding on that issue in favor of the non-moving party. *Anderson*, 477 U.S. at 248. The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). If the non-moving party fails to do so, then summary

6

judgment, if appropriate, should be granted for the moving party. *Id.*

However, "a party is never required to respond to a motion for summary judgment in order to prevail since the burden of establishing the nonexistence of a material factual dispute always rests with the movant." *Smith v. Hudson*, 600 F.2d 60, 64 (6th Cir. 1979). The movant retains the burden of establishing that "the moving party is entitled to judgment as a matter of law[,]" even if the non-moving party fails to respond. Fed. R. Civ. P. 56©).

### B. Applicable Law and Analysis

#### 1. Relationships between FedEx, FedEx Europe, and Plaintiff

Parent companies and their subsidiaries are considered "separate entities with all the rights, duties, and responsibilities of a separate corporation." *Marquardt Co. v. United States*, 822 F.2d 1573, 1579 (Fed Cir. 1987). The Sixth Circuit has held that there must be "sufficient indicia of an interrelationship between the immediate corporate employer and the affiliated corporation to justify the belief on the part of an aggrieved employee that the affiliated corporation is jointly responsible for the act of the immediate employer." *Armbruster v. Quinn*, 711 F.2d 1332, 1337 (6th Cir. 1983), *overruled on other grounds by Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006). The normal relationship between such corporations generally would not be grounds to make the parent company responsible for the subsidiary's Title VII violations. *Id.* Only under special circumstances, such as the existence of a significant interrelationship between the parent and subsidiary (where the parent exercises a greater amount of control over the subsidiary than that of a normal parent company) will responsibility for the subsidiary's activity be extended to the parent company. *Id.* at 1337-38.

A four part test has been promulgated by the National Labor Relations Board to

determine whether this extension of responsibility to the parent company should occur. *Armbruster*, 711 F.2d at 1337. The court must assess "the degree of (1) interrelated operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership" between the two entities. *Id.*, citing *Radio & Television Broadcast Technicians Local Union 1264 v. Broadcast Service of Mobile, Inc.*, 380 U.S. 255, 256 (1965). The presence of any single factor is not conclusive, nor is it necessary that all four factors be present. *Id.* The standard requires that the entities be "highly integrated with respect to ownership and operations." *Id.* at 1338 (quoting *Fike v. Gold Kist, Inc.*, 514 F. Supp. 722, 726 (N.D. Ala.1981)). This standard can be satisfied by showing there is a degree of participation that is "sufficient and necessary to the entire employment process." *Arbruster*, 711 F.2d at 1337 (citing *Rivas v. State Bd. for Cmty. Colls. and Occupational Educ.*, 517 F.Supp. 467, 470 (D. Colo. 1981)).

The Sixth Circuit refined the test, where the court is to assess the "(1) interrelation of operations, i.e., common offices, common record keeping, shared bank accounts and equipment; (2) common management, common directors and boards; (3) centralized control or labor relations and personnel; and (4) common ownership and financial control." *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 994 (6th Cir. 1997). FedEx notes in its memorandum that other federal district courts have followed a similar approach. (Docket Entry 25); *see Morgan v. Safeway Stores, Inc.*, 884 F.2d 1211, 1213-14 (9th Cir. 1989); *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062 (10th Cir. 1998); *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235 (2d Cir. 1995); *Garcia v. Elf Atochem North America*, 28 F.3d 446 (5th Cir. 1994); *Trevino v. Celanese Corp.*, 701 F.2d 397 (5th Cir. 1983); *Baker v. Stuart Broadcasting Co.*, 560 F.2d 389 (8th Cir. 1977).

8

In the instant case, FedEx argues in its motion for summary judgment that it should be dismissed from the case in part because the Amended Complaint "fails to specifically allege any wrongdoing on the part of FedEx, but instead, merely identifies FedEx as a party." (Docket Entry 23). It is undisputed that FedEx Europe is and has been claimant's employer since January 1993. (Docket Entry 30). Further, Plaintiff has never worked in the United States for another FedEx entity. (Docket Entry 30). FedEx claims its only relation to the instant case is that it is the parent corporation of FedEx Europe, and that this alone is not enough to extend responsibility for the Plaintiff's claims to the defendant. (Docket Entry 25).

It is undisputed that FedEx and FedEx Europe are not the same corporation; they are separate and distinct entities. (Docket Entry 30). The parties also agree that FedEx Europe was and is the claimant's employer. (Docket Entry 30). Catherine L. Bowsher, acting as a Manager of Human Resources at FedEx, reviewed the company's personnel information and determined that Plaintiff has never been, nor is he currently, employed by FedEx. (Docket Entry 24-1). Further, Plaintiff has presented no evidence which demonstrates that he was employed by FedEx.

Mr. C. Edward Klank III, a Staff Director for Securities and Corporate Law employed by FedEx, is "fully familiar with the corporate organization and history of FedEx Corporation and its subsidiaries." (Docket Entry 24-3). In his declaration, Mr. Klank notes that FedEx was incorporated in the State of Delaware in October 1997, and its principal place of business is located at 942 South Shady Grove Road in Memphis, Tennessee. (Docket Entry 24-3). FedEx Europe – German Branch is a registered branch of FedEx Europe and was incorporated in June 1989 in Delaware. (Docket Entry 24-3, 30). Its principal place of business is located at 3610 Hacks Cross Road, Memphis, Tennessee – a different location from that of FedEx. (Docket

9

Entry 24-3). Further, Mr. Klank states that FedEx Europe is "an indirect wholly owned subsidiary of FedEx Corporation," but they are "separate and distinct entities." (Docket Entry 24-3).

The Magistrate Judge has applied the *Swallows* test to the instant case. 128 F.3d at 994. The Plaintiff has alleged violations by the defendant under Title VII and the ADA, whereas the *Swallows* case deals with claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.S. §§ 621-34, and the ADA, 42 U.S.C.S. §§ 12111-12117. However, the Magistrate Judge is able to rely on case law under all three statutes because "employer" is defined "essentially the same way." *Swallows*, 128 F.3d at 993 n.2.

### a. Interrelation of Operations, i.e., Common Offices, Common Record Keeping, and Shared Bank Accounts and Equipment

The first factor of the test considers the degree of interrelated operations among FedEx and FedEx Europe, which considers common offices, common record keeping, and shared bank accounts and equipment. *Id.* at 993. The principal places of business for the two companies are at different locations in Memphis. (Docket Entry 24-3). Mr. Klank states that FedEx does not issue the payroll checks for FedEx Europe. (Docket Entry 24-3, p. 3). The Plaintiff denies this assertion and directs the Court to the Plaintiff's payroll check stub, which does in fact state "Federal Express Incorporation" at the top. (Docket Entry 29-1). The rest of the payroll stub is in German. (Docket Entry 29-1). However, it is undisputed that each company maintains its own bank accounts and that Federal Express Incorporation is another subsidiary of FedEx, not FedEx itself. (Docket Entry 24-3, 30).

The Plaintiff directs the Court to the Affidavit of Reza Djafarij, who has been employed

10

by FedEx Europe since 1991 and is a member of the Works Council. (Docket Entry 29; Docket Entry 29-1, 30). She states that Martin Englmann (Sr. Manager Operation - International Scope) "repeatedly traveled to FedEx USA in Memphis in the year 2007 for consulting talks and decision-making with regard to the formation of a new HUB in [Cologne]." (Docket Entry 29-1). Further, Ms. Djafarij notes that HUB-Managers, as employees of FedEx Europe, also made trips to FedEx USA Memphis in 2007 to receive training. (Docket Entry 29-1). According to the Plaintiff, these trips demonstrate that "the two companies jointly train their employees," which implies some degree of interrelation of operations. (Docket Entry 29). The Defendant responds that Ms. Djafari's Affidavit should be disregarded, as it has not been shown that she possesses personal knowledge of training events occurring in Memphis. (Docket Entry 31); Fed. R. Evid. 602.

Based on the above, it appears that while there may some interrelation of operations between the two companies as parent and subsidiary, the two entities are still separate and distinct. FedEx and FedEx Europe maintain separate bank accounts, separate records, and separate offices. Further, while Plaintiff has provided Ms. Djafariji's affidavit regarding FedEx Europe employees receiving training at FedEx, Plaintiff has provided no additional evidence that the two companies train their employees and management together or that the companies share equipment. The Magistrate Judge notes that Ms. Djafariji herself, a FedEx Europe employee, does not claim to have ever received training at FedEx. Further, while the FedEx website pages under the employee inquiry section do appear to have FedEx Europe employees listed, the website does not affirmatively state that these persons are in fact FedEx employees. Additionally, the addresses listed for the employees are international locations or FedEx

11

Europe's Memphis address, not FedEx's. The Magistrate Judge does agree with the Plaintiff that this website could be misleading. However, this alone does not satisfy this portion of the *Swallows* test.

Therefore, Plaintiff has not provided sufficient evidence to establish that FedEx and FedEx Europe have a significant interrelation of operations.

### b. Common Management

Regarding the second factor, which considers common management and common directors and boards, Mr. Klank states that "there are no individuals who serve as a member of the Board of Directors of both FedEx Corporation and [FedEx Europe]." *Id.*; (Docket Entry 24-3). While it is undisputed that FedEx and FedEx Europe have different Boards of Directors, there *are* in fact some individuals who serve both companies. (Docket Entry 24-3, 30). FedEx admits this fact but states that "operations of the parent and subsidiary are not so highly integrated to warrant the imposition of liability on FedEx Corporation." (Docket Entry 25). This statement about operations, however, does not negate the fact that the two companies share some directors and officers.

There are five individuals listed on both companies' Directors/Officers Reports. (Docket Entry 24-3). Christine P. Richards serves as an Executive Vice President, General Counsel, and Secretary (officer positions) for FedEx and as a Director for FedEx Europe. (Docket Entry 24-3). Hugh A. Skinner serves as an Assistant Treasurer for both FedEx and FedEx Europe. (Docket Entry 24-3). Robert T. Molinet serves as Corporate Vice President - Securities and Corporate Law and as Assistant Secretary for FedEx. (Docket Entry 24-3). He serves as an Assistant Secretary for FedEx Europe. (Docket Entry 24-3). James H. Ferguson is Staff Vice President -

12

Business and Customer Transactions for FedEx, and he serves as Assistant Secretary for FedEx Europe. (Docket Entry 24-3). Burnetta B. Williams is Corporate Vice President and Treasurer for FedEx and Treasurer for FedEx Europe. (Docket Entry 24-3).

In *Armbruster*, there was evidence showing that the president of the parent company was a director and officer of the subsidiary. 711 F.2d at 1339. This evidence, *when combined with other evidence* showing the degree of interrelation (i.e. parent company solely owned the subsidiary and handled the subsidiary's accounts receivable, provided it administrative backup, handled its payroll and cash accounting, and monitored shipments), helped the court determine that the two companies should have a single employer status. *Id.* In the instant case, the record does not reflect the extent of involvement these five shared employees have with each company. The mere fact that some individuals serve both companies as officers or board members does not satisfy the second element of the test. *Swallows*, 128 F.3d at 994. When viewing the allegations of interrelation as a whole, Plaintiff has failed to satisfy this factor. *Armbruster*, 711 F.2d at 1339.

### c. Centralized Control or Labor Relations and Personnel

The third factor considers whether there is centralized control or labor relations and personnel. *Swallows*, 128 F.3d at 994. Plaintiff admits that he does not assert this prong as a basis. (Docket Entry 29). Plaintiff specifically concedes that he does not assert centralized control of labor relations and personnel as a basis because not all prongs of the *Swallows* test are applicable. Control over labor relations, however, is a main concern under the four-factor test, so the Magistrate Judge has considered it. *Id.*

The critical question addressing this factor asks "what entity made the final decisions

13

regarding employment matters related to the person claiming discrimination." *Id.* at 995 (citing *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1363 (10th Cir. 1993); *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983)). Essentially, this factor seeks to determine which entity has the power to hire and fire the employee. *Swallows*, 128 F.3d at 995. Even if a parent company has some influence in certain employment decisions, as the parent company did in *Swallows*, the factor is not satisfied if it does not control "those decisions in the manner seen in single employer situations." 128 F.3d at 995. Further, even if the parent company does not exercise total control over hiring decisions, the test can be satisfied if it is shown that the parent company participates a sufficient and necessary amount in the overall employment process. *Armbruster*, 711 F.2d at 1338.

FedEx claims that it does not have "day-to-day control over the employment decisions of managers" for FedEx Europe, which include "hiring, promotion, discipline[,] and termination." (Docket Entry 25, citing Docket Entry 24-3). FedEx further states it is not responsible for the discipline rendered on the Plaintiff, nor for the alleged refusal to promote the claimant based on his race. (Docket Entry 19, ¶ 9; Docket Entry 25). In *Armbruster*, the court determined that the parent company had more than mere "awareness" of the hiring and termination decisions made by the subsidiary. 711 F.2d at 1339. In light of this and other factors, the parent retained single employer status with that of its subsidiary. *Id.* In the instant case, the defendant *at most* only has an awareness of its subsidiary's employment decisions, as Mr. Klank notes that FedEx "does not exercise control over the day-to-day employment decisions . . . of FedEx Europe." (Docket Entry 24-3). Whether FedEx even possesses such "awareness" is uncertain. Thus, the third factor is not satisfied in the instant case. *Swallows*, 128 F.3d at 995.

14

### d. Common Ownership and Financial Control

The fourth factor considers whether the two entities have common ownership and financial control. *Swallows*, 128 F.3d at 994. The fourth factor has been interpreted to be a means of determining the legitimacy of the entities: if "neither of the entities is a sham," then this factor is not satisfied. *Id.*, citing *EEOC v. Wooster Brush Co. Employees Relief Ass'n*, 727 F.2d 566, 572 (6th Cir. 1984). In *Wooster Brush*, the fourth element was not met because the Association maintained a "distinct legal identity and had its own separate managerial board." 727 F.2d at 573.

Similarly, the defendant FedEx has a distinct legal identity and a separate managerial board from FedEx Europe. For instance, FedEx and FedEx Europe are both legitimate companies that have been officially and separately incorporated in Delaware. (Docket Entry 30). The fourth element appears to be unsatisfied under the *Swallows* "sham" standard. 128 F.3d at 994. The factor is not satisfied even though FedEx Europe is an "indirect wholly owned subsidiary of FedEx," because such a relationship alone is not sufficient to make a parent company responsible for its subsidiary's alleged Title VII violations. (Docket Entry 30, ¶ 7); *Armbruster*, 711 F.2d at 1337.

Upon application of the four-factor test to the instant case, it is clear that the elements are unsatisfied to the extent necessary to hold FedEx responsible for any alleged Title VII violations of FedEx Europe. Plaintiff has failed to provide sufficient proof that the two companies are sufficiently interrelated. Therefore, the Magistrate Judge **recommends** that FedEx's motion for summary judgment on this issue be **granted**.

### 2. The Doctrine of *forum non conveniens*

15

The doctrine of *forum non conveniens* is only appropriate when "the alternative forum is abroad." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 722 (1996). When such an alternative is available, the Court should dismiss the case (as opposed to directly transferring it). *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253-54 (1981). Moreover, whereas there is usually a "strong presumption in favor of the plaintiff's choice of forum, [this choice] may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Id.* at 255.

Clearly, a case should only be dismissed under *forum non conveniens* if the alternative, foreign forum has jurisdiction to hear the case. *Piper Aircraft*, 454 U.S. at 241, 255 n.22. Usually, this requirement is satisfied when the defendant is "amenable to process" in the foreign jurisdiction. *Id.* at 255 n.22 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 506-07 (1947)). Dismissal may not be appropriate, however, if the alternative forum is "clearly unsatisfactory." *Id.* at 255 n.22. For instance, if the alternative forum does not allow litigation pertaining to the subject matter at issue, then transfer is inappropriate. *Id.* As long as an adequate remedy exists, then the possible change in substantive law resulting from the shift to a foreign forum should "ordinarily not be given conclusive or even substantial weight in the *forum non conveniens* inquiry." *Id.* at 247.

Once this initial requirement of an alternate forum is satisfied, the Court must then weigh private interests of the parties as well as public interest factors. *Id.* at 257-61; *Stewart v. Dow Chemical Co.*, 865 F.2d 103, 106 (6th Cir. 1989). In considering these factors, much focus should be placed on convenience, as this is a central goal of the *forum non conveniens* doctrine. *Piper*

16

*Aircraft*, 454 U.S. at 249. Regarding private interest factors, some of the important considerations include:

> (1) the relative ease of access to sources of proof;
>
> (2) the availability of compulsory process for attendance of unwilling witnesses;
>
> (3) the cost for obtaining attendance of willing witnesses;
>
> (4) the possibility of viewing the premises, if appropriate; and
>
> (5) all other practical problems that make trial of a case easy, expeditious, and inexpensive.

*Gilbert*, 330 U.S. at 508; *Piper Aircraft*, 454 U.S. at 257-60.

Additionally, the Court should consider public interest factors in determining whether *forum non conveniens* applies. *Gilbert*, 330 U.S. at 508; *Piper Aircraft*, 454 U.S. 257-60. These factors include:

> (1) administrative difficulties arising from congested courts separate from the origin of the litigation;
>
> (2) imposition of jury duty on members of a community who have no relation to the litigation;
>
> (3) local interest of having localized controversies decided at home; and
>
> (4) avoidance of conflicts of law problems and the difficult application of foreign law.

*Gilbert*, 330 U.S. at 508; *Piper Aircraft*, 454 U.S. at 257-60.

### a. Germany as an Alternative, Available Forum

In the instant case, FedEx states that dismissal is appropriate on *forum non conveniens* grounds based on the above criteria. The Magistrate Judge finds this to be an interesting claim

17

considering that FedEx itself provided definitive opinions from German attorneys who state that as "there is no contract relationship between [FedEx and Plaintiff]...German courts are not competent." (Docket Entry 31-1, Page 4). Further, these same German attorneys state that under the General Equal Treatment Act ("GETA"), the alleged applicable law in Germany, Plaintiff "could only take action against...[FedEx Europe]." (Docket Entry 31-1, Page 6).

In spite of this evidence, FedEx claims there is "an adequate and available alternative foreign forum for resolving this dispute." (Docket Entry 25). Mr. Christof Kleinmann,[2] a Specialist in Labor Law, wrote a letter on January 28, 2008, provided by the Plaintiff, which was translated for the record. (Docket Entry 29-1). In the letter, he explains that the Gleichbehandlungsgesetz (General Equal Treatment Act ("GETA")) has been in force in Germany since August 18, 2006, and it protects "against racial discrimination [and] ethnic discrimination, etc." (Docket Entry 29-1). The goal of the law is to eliminate or prevent the disadvantages people experience because of their race, ethnical origin, sex, religion, or handicap. (Docket Entry 25-2). The definitions section of the GETA lists the different types of disadvantages that an employer may create that violate the law. For instance, a "direct disadvantage" occurs when someone experiences "less favorable treatment . . . than another person in a comparable situation experiences, experienced[,] or would experience" because of that person's race. (Docket Entry 25-2, § 3). Further, an "annoyance" is a type of disadvantage that occurs, as an example, when an employee is faced with "intimidations, meeting with

_____

[2]The Magistrate Judge does not profess to be an expert on German law, especially relatively new German law. Therefore, while the Magistrate Judge has conducted independent research, he has also relied heavily upon the new German law dealing with these issues as interpreted by the parties' German attorneys in this matter.

18

hostility, degradations, . . . or offenses" because of his or her race. (Docket Entry 25-2, § 3).

However, the GETA "has hardly generated any effect up to now" and has been referred to as a "stillbirth." (Docket Entry 29-1). Mr. Kleinmann explains that this minor effect results from the fact that, under German law, it is the "responsibility of the victim to provide and furnish evidence that the victim has been discriminated for racial motives." (Docket Entry 29-1). No cases thus far have resulted in the employer paying compensation for racial discrimination. (Docket Entry 29-1). Because German courts are "reluctant" to give compensation and damages to claimants, recovery amounts are relatively low. (Docket Entry 31-1). Moreover, according to a survey of one hundred labor law specialists, only one case arises per year that relates to the new law, which shows how underdeveloped the anti-discrimination right is in Germany. (Docket Entry 29-1).

Further, German law does not recognize penal damages to the degree that American law does. (Docket Entry 29-1). The GETA has taken a step in that direction, but employers still only "run the risk of having to make penal payments in the amount of maximally 5% of the amounts that are customary" in the United States. (Docket Entry 29-1). In Germany, a discrimination claim such as this must be filed in the Labor Court, where one professional and two lay judges preside. (Docket Entry 29-1). This is also true of the Higher Labor Court. (Docket Entry 29-1). Also, "legal proceedings before a jury are not permitted in Germany." (Docket Entry 29-1).

Although the German law protecting employees from discrimination is not as developed as that of the United States, a remedy still exists under the GETA for a claim of discrimination. (Docket Entry 25-2). Under *Piper Aircraft*, "dismissal on grounds of *forum non conveniens* may be granted even though the law applicable in the alternative forum is less favorable to the

plaintiff's chance of recovery. . . . The possibility of an unfavorable change of law should not, by itself, bar dismissal." *Piper Aircraft*, 454 U.S. at 250. At the same time, however, "if the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all, the unfavorable change in law may be given substantial weight." *Id.* at 254. The district court may then determine that dismissal "would not be in the interests of justice." *Id.*

The GETA would apply to Plaintiff, as it covers all employees in Germany (and claimant is an employee of FedEx – German Branch). (Docket Entry 31-1). Further, his claims fall within the scope of this law, as the GETA seeks to prevent discrimination in the "hiring of employees, their employment and working conditions, professional advancement[,] and working environment." (Docket Entry 31-1). Plaintiff also falls under an exception that allows the employer to treat the employee differently: "in case of a severe disability, the employee may not be assigned to such work which requires a specific physical condition and/or strong physical forces." (Docket Entry 31-1).

In contrast to Mr. Kleinmann's discussion of the ineffectiveness of the GETA, Ms. Zange and Dr. Kaya state that a remedy does exist for plaintiff – as demonstrated by many "low instance labor courts [that] have already issued jurisprudence on grounds of the [GETA]," despite the relative newness of the law. (Docket Entry 31-1). It appears that if plaintiff presents a good case to the German labor court – showing he underwent adverse treatment when compared to co-workers who are neither African-American nor severely disabled – then he will be entitled to a remedy under GETA. (Docket Entry 31-1). Therefore, it does appear to the Magistrate Judge that GETA could provide Plaintiff with some relief, albeit not in the same amount or manner as under American law.

20

However, it appears that, based upon the evidence provided by FedEx itself, that Plaintiff would be unable to maintain any claims in Germany against FedEx, only FedEx Europe. Therefore, the arguments over the adequacy of GETA claims appears to the Magistrate Judge to be irrelevant as no GETA claims could even be brought against FedEx. Ms. Zange and Dr. Kaya state that Plaintiff could only bring a claim against FedEx Europe in Germany, as only Plaintiff and FedEx Europe have a domestic relationship: FedEx Europe is Plaintiff's contractual employer, its branch offices are located in Germany, and Plaintiff resides in Germany. (Document 31-1). *Ms. Zange and Dr. Kaya affirmatively state that Plaintiff cannot bring suit against FedEx Memphis in the German forum as "there is no contract relationship between them and German courts are not competent."* (Docket Entry 31-1, Page 4). Further, Ms. Zange and Dr. Kaya also definitively state that only FedEx Europe, as the entity employing Plaintiff, could be held liable under GETA. (Docket Entry 31-1, Page 6). As such, it seems clear to the Magistrate Judge, based upon the evidence provided by FedEx, that a German forum could not provide adequate relief against FedEx.

However, even Plaintiff could sustain an action against FedEx in Germany, of further concern to the Magistrate Judge is the statute of limitations under GETA. It appears that Plaintiff would only be able to receive compensation and damages from FedEx *if he asserted his claims of adverse treatment in writing within two months of obtaining knowledge of such treatment.* (Docket Entry 31-1). This rule alone may prevent the plaintiff from recovering in the German forum. The GETA covers "perpetuated adverse treatment starting before, but continuing beyond August 18, 2006." (Docket Entry 31-1). Yet Plaintiff claims he began experiencing the adverse treatment around July 15, 2000, and he originally filed charges against FedEx with the

21

EEOC around March 3, 2005. (Docket Entry 1). He then filed a complaint under Title VII on December 5, 2006. (Docket Entry 1). However, no evidence has been given to prove that Plaintiff ever asserted his claims of adverse treatment in writing within two months of obtaining knowledge of such treatment in Germany. (Docket Entry 31-1). Thus, it is questionable as to whether Plaintiff could actually seek an adequate remedy under the GETA.

Therefore, given the above, it appears to the Magistrate Judge that while Plaintiff may possibly have an adequate remedy under German law against FedEx Europe, Plaintiff does not have an adequate remedy under German law against FedEx. Further, the statute of limitations issue could possibly prevent Plaintiff from receiving adequate relief under German law even if Plaintiff was able to maintain a cause of action against FedEx. As FedEx Europe has not yet been served or filed an answer with the Court, the issue of foreign non conveniens as to them is not before the Court.

Regardless of whether this report and recommendation on the summary judgment motion is adopted, it appears to the Magistrate Judge the most appropriate U.S. forum is not the Middle District of Tennessee. Both Defendants, FedEx and FedEx Europe, have their principal places of business in Memphis. As such, the Magistrate Judge recommends transfer under 28 USC §1404 to the Western District of Tennessee. While a Plaintiff's choice of forum is generally entitled to substantial weight, when a given action has a limited connection with the forum and is not the Plaintiff's residence, the Plaintiff's choice is to be afforded less weight than would otherwise be the case. *Allenberg Cotton Co. v. Staple Cotton Cooperative Ass'n,* 2007 WL 2156352 at *2 (W.D. Tenn. July 25, 2007). The Plaintiff's interest decreases even further where the central facts of the lawsuit occur outside the chosen forum. *Id.* at 324.

22

The Defendant has shown that there is a limited connection with this forum. Further, the Magistrate Judge believes that access to proof and witnesses would be more easily accomplished where the Defendants have their principal places of business. It appears that at least some of the German employees do travel to Memphis, making them more accessible to the Plaintiff at minimal travel cost. In fact, some of them may be able to travel on FedEx flights. Further, documents relating to FedEx Europe-German branch will more accessible in Memphis, it's principal place of business. As such, the Magistrate Judge believes that the convenience of the parties and witnesses and the interests of justice require transfer to the Western District of Tennessee.

## IV.    RECOMMENDATION

For the reasons stated below, the Magistrate Judge **recommends** that FedEx's motion for summary judgment be **granted in part** and **denied in part** and that this action be **dismissed**. Specifically, the Magistrate Judge finds that there is not sufficient evidence that FedEx and FedEx Europe are sufficiently interrelated to hold FedEx responsible for any alleged Title VII violations of FedEx Europe. The evidence provided clearly establishes that the two are separate and distinct entities. Therefore, the Magistrate Judge **recommends** that FedEx's motion for summary judgment on this issue be **granted** and that this action be **dismissed** against FedEx. The Magistrate Judge finds that there is no alternative adequate relief under German law and as such, FedEx's motion for summary judgment on ground of *forum non conveniens* should be **denied.**

The Magistrate Judge further recommends that this action be transferred under 28 USC § 1404 to the Western District of Tennessee for any further proceedings.

23

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has **ten (10) days** from receipt of this Report and Recommendation within which to file with the District Court any written objections to the proposed findings and recommendations made herein. Any party opposing said objections shall have **ten (10) days** from receipt of any objections filed regarding this Report within which to file a response. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation may constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 1111 (1986).

ENTERED this _14_ day of August, 2008

Joe B. Brown
Magistrate Judge

24